IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN KEYS, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. |
| MILES COLLEGE, | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Kevin Keys files this Complaint against Miles College and avers as follows:

## PARTIES

1. Plaintiff Kevin Keys ("Keys") is a graduate of Miles College and lives in Detroit, Michigan.

2. Defendant Miles College ("Miles") is a senior, private, liberal arts Historically Black College with roots in the Christian Methodist Episcopal Church.[1] Miles is located in Fairfield, Alabama.

## JURISDICTION

3. Jurisdiction in this matter is based upon 28 U.S.C. § 1332, diversity jurisdiction. Diversity jurisdiction exists when two conditions are met: 1) The

---

[1] https://www.miles.edu/

2773692.1

amount in controversy exceeds $75,000, exclusive of interests and costs; and 2) the civil action is between citizens of different states. Keys seeks damages in excess of $75,000. This action is between citizens of different states, as Keys is a citizen of Michigan, and Miles is a citizen of Alabama.

## VENUE

4. Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b)(2) in that the events giving rise to this claim occurred in this district.

## PERSONAL JURISDICTION

5. This Court has personal jurisdiction over Miles pursuant to 18 U.S.C. § 1965(a), as Miles resides, is found, has an agent, and transacts affairs in Alabama.

## PREDICATE FACTS

6. Keys is a native of Detroit, Michigan. During his senior year in high school, he chose Miles as the place to further his education because it was the place where he felt he could make the most difference.

7. Keys was drawn to Miles because of its programs and culture, which led him to conclude that "Alabama is where I need to be."

8. Keys enrolled as a student at Miles in the fall semester of 2020. He immediately immersed himself into the activities and culture of Miles. This included

the Miles Student Government Association ("SGA") and the renown Miles College band – the "Purple Marching Machine."

9. Unfortunately, this was also the beginning of Miles' tortious mistreatment of Keys. The band director, Mr. Willie Snipes, told Keys that he could not be in the band and involved in the SGA. When Keys chose the SGA, Mr. Snipes retaliated by issuing Keys a grade of C in a class Keys no longer could take because Keys was not in the band.

10. In the 2022 spring semester, Keys ran for and was elected SGA President. However, Miles refused to allow him to serve and failed to honor its own conclusion that Keys was qualified to run for and be elected to the position.

11. Mr. Charles Stallworth, Vice President of Student Affairs and Dean of Students, approved Keys as a qualified candidate for SGA President for the 2022 spring semester.

12. Miles harmed Keys through this process, which included:

   a. The illegal – and false – disclosure of his Grade Point Average "GPA."

   b. Intimidation by Dr. Jarralynne Agee, then Provost and Senior Vice President of Academic Affairs, who called Keys and screamed at him. Dr. Agee also refused to properly process a grade discrepancy request in a class she taught.

    c. Hall directors at Bass Hall stating publicly – and wrongly – that Keys did not have the GPA to run for SGA President.

    d. The intentional failure by Miles to appropriately address Keys' election appeal.

    e. The then Miles Police Chief, Kenneth Prevo, attempting to intimidate, frighten, and discourage Keys from protesting Prevo's appointment as chief.

## COUNT I: DEFAMATION

13. Keys incorporates all preceding paragraphs as if fully set forth herein.

14. To establish prima facie case of defamation under Alabama law, plaintiff must show (1) that defendant was at least negligent (2) in publishing (3) false and defamatory statement to another (4) concerning plaintiff, (5) which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod). *Garcia v. Casey*, 75 F.4th 1176 (11th Cir. 2023).

15. Miles, through at least Dr. Agee, negligently published a false and defamatory statement to another person stating Keys did not have the necessary GPA to run for SGA President.

16. Miles, through at least Dr. Agee, intentionally published a false and defamatory statement to another person stating Keys did not have the necessary GPA to run for SGA President.

17. This false statement caused substantial injury to Keys.

18. Keys suffered public ridicule and embarrassment because of Miles' defamatory statements.

19. The false statements also resulted in Keys not being allowed to serve as SGA President.

20. Keys was mentally and emotionally damaged, which manifested itself in the form of anxiety, for which he was required to receive medical treatment.

21. Keys, in fact, did have the required GPA to run, and Keys was approved to run by Dean Stallworth.

22. Miles' actions violated Alabama law and directly and proximately caused Keys to be damaged and injured. Keys is entitled to compensatory damages for the harm Miles caused him.

WHEREFORE, premises considered, due to the harm, mental anguish and emotional distress Miles caused, Keys demands judgment against Miles in an amount in excess of $75,000, to be proven at trial, plus costs, interest, and other such relief as the Court deems just and proper.

## COUNT II: ASSAULT

23. Keys incorporates all preceding paragraphs as if fully set forth herein.

24. In 2022, Miles College hired Kenneth Prevo as its Police Chief. Keys protested Prevo's appointment as Chief because Prevo was a former Birmingham police officer alleged to have beaten an unconscious driver.

25. Prevo took steps to intimidate, frighten, and discourage Keys from protesting Prevo's appointment as chief.

26. First, Chief Prevo confronted Keys on campus regarding Keys' opposition to his appointment as Chief.

27. The very next day, Chief Prevo showed up to Keys' dorm room, uninvited and unannounced, because Keys (and other students) objected to Prevo's hiring and said so publicly. Prevo got very close to Keys, and his rude actions and words created in Keys' mind a well-founded fear that Prevo wanted to and was about to physically harm him. Prevo was in a position to do so and had the ability to do so.

28. "Assault" is an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of that person a well-founded fear of imminent battery, coupled with the apparent present ability by the perpetrator to effectuate the attempt, if not prevented. *See Wood v. Cowart*, 809 So.2d 835, 837 (Ala. Civ. App. 2001).

WHEREFORE, premises considered, due to the harm, mental anguish, and emotional distress Miles caused, Keys demands judgment against Miles in an amount in excess of $75,000, to be proven at trial, plus costs, interest, and other such relief as the Court deems just and proper.

## COUNT III: NEGLIGENCE

29. Keys incorporates all preceding paragraphs as if fully set forth herein.

30. In 2022, without Keys' permission, Miles disclosed his GPA to persons who had no legal, legitimate reason to know Keys' GPA. In fact, Dr. Agee offered to and did disclose Keys GPA to other students.

31. The Family Educational Rights and Privacy Act[2] (FERPA) prohibits educational institutions from disclosing personally identifiable information in education records without the written consent of the student. This statute, therefore, creates a duty on Miles to not disclose Keys' GPA without his consent.

32. Keys did not consent to Miles' disclosures of his GPA. Therefore, Miles breached a duty owed to Keys.

33. Miles' breach caused damage to Keys as the persons to whom Miles disclosed his personally identifiable educational information shared that information with others.

---

[2] 20 U.S.C. § 1232g and 34 C.F.R. Part 99

7

2773692.1

34. Miles' violations of FERPA caused damage to Keys. Rumors and gossip about Keys resulted from Miles' violations, which led to ridicule, humiliation, mental anguish, and emotional anguish.

35. Although FERPA does not itself provide a cause of action for such a violation, the duty it creates on educational institutions such as Miles sufficiently establishes a duty the breach of which is actionable under Alabama law when, as in this case, the breach causes damages.

WHEREFORE, premises considered, due to the harm, mental anguish, and emotional distress Miles caused, Keys demands judgment against Miles in an amount in excess of $75,000, to be proven at trial, plus costs, interest, and other such relief as the Court deems just and proper.

## COUNT IV: INVASION OF PRIVACY

36. Keys incorporates all preceding paragraphs as if fully set forth herein.

37. Alabama courts define invasion of privacy as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 737 (Ala. 2001) (quoting *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995)). The tort of invasion of privacy consists of four limited and distinct wrongs. Keys asserts claims under two of those wrongs:

2773692.1

      (1) intruding into the plaintiff's physical solitude or seclusion; and

      (2) giving publicity to private information about the plaintiff that violates ordinary decency.

38.    Miles intruded upon Keys' physical solitude and seclusion when then Chief Prevo showed up at Miles' residence hall room – uninvited, unannounced, and unwelcomed. Chief Prevo's words, presence, and/or conduct, which also constituted an assault, disrupted Keys' physical solitude and seclusion because of his close physical proximity, his demeanor, and his displeasure in Keys' disagreement with Prevo being named Chief.

39.    Likewise, Miles gave publicity to private information about Keys when at least Dr. Agee told students that Keys did not have the GPA to run for SGA President.

WHEREFORE, premises considered, due to the harm, mental anguish, and emotional distress Miles caused, Keys demands judgment against Miles in an amount in excess of $75,000, to be proven at trial, plus costs, interest, and other such relief as the Court deems just and proper.

## COUNT V: WANTONNESS

40.    Keys incorporates the preceding allegations as if fully set forth herein.

41.    Wantonness requires the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that,

from doing or omitting to do an act, injury will likely or probably result. ALA. CODE § 6-11-20(b)(3).

42. This is exactly what Dr. Agee did when she consciously and without justification told students at Miles that Keys did not have the GPA to run for SGA President. Dr. Agee knew this statement was false. Dr. Agee knew this statement would cause students to gossip about, ridicule, and harass Keys. Dr. Agee knew her statement could and did prevent Keys from becoming SGA President.

43. The actions of Dr. Agee were purposeful and intentional. Her actions were conscious actions and done in a specific effort to prevent Keys from becoming SGA president.

WHEREFORE, premises considered, due to the harm, mental anguish, and emotional distress Miles caused, Keys demands judgment against Miles in an amount in excess of $75,000, to be proven at trial, plus costs, interest, and other such relief as the Court deems just and proper.

/s/Alfred H. Perkins, Jr
ALFRED H. PERKINS, JR.
ASB-3979-R68A
(aperkins@starneslaw.com)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL  35259-8512
Telephone: (205) 868-6024
Facsimile: (205) 868-6099

*Attorney for Plaintiff*

**PLEASE SERVE DEFENDANT AS FOLLOWS:**

**Miles College**
**Dr. Bobbi Knight, President**
**5500 Myron Massey Blvd.**
**Fairfield, AL  35064**